**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| MARC GABRIEL SALAZAR, | § | |
|   Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:25-CV-1364-P |
| | § | |
| LOCKHEED MARTIN CORPORATION, | § | |
|   Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S THIRD
AMENDED COMPLAINT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE
FOURTH AMENDED COMPLAINT**

Pending before the Court is Defendant Lockheed Martin Corporation ("Lockheed)'s Motion to Dismiss With Prejudice Plaintiff's Third Amended Complaint [doc. 51], filed March 18, 2026, and Plaintiff's Motion for Leave to File Fourth Amended Complaint [doc. 79], filed June 8, 2026. Having carefully considered the motions, response, and reply, the Court **RECOMMENDS** that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

## I.    BACKGROUND

Plaintiff Marc Gabriel Salazar ("Salazar") was employed by Lockheed from approximately 2016[1] through his termination date on December 13, 2022. (Plaintiff's Third Amended Complaint [doc. 47] ("Pl.'s Third Am. Compl.") at 5, 10.)[2] On December 4, 2025, Salazar filed this suit against Lockheed [doc. 1]. In his Third Amended Complaint [doc. 47], which is the live pleading before this Court, Plaintiff alleges the following claims against Lockheed: (1) interference in

---

[1] The Court notes that in Plaintiff's proposed Fourth Amended Complaint, Plaintiff alleges that he was originally hired on October 19, 2009. (Plaintiff's Proposed Fourth Amended Complaint ("Pl.'s Proposed Fourth Am. Compl.") [doc. 79-1] at 3; *see also* Plaintiff's Third Amended Complaint at 60.)

[2] Plaintiff restarted his job at Lockheed on August 21, 2023, approximately nine months later. (Pl.'s Third Am. Compl. at 60-62.)

violation of the Family Medical and Leave Act ("FMLA"); (2) retaliation in violation of the FMLA; (3) wrongful termination; (4) breach of contract/seniority rights; (5) interference in violation of the Employee Retirement Income Security Act ("ERISA"); and (6) negligent misrepresentation.  (Pl.'s Third Am. Compl. at 11-12; *see also* doc. 48 at p. 1.)

In its Motion to Dismiss, Lockheed argues, *inter alia*, that all of Salazar's claims against it should be dismissed with prejudice for the following reasons: (1) Plaintiff's claims under the FMLA are time-barred; (2) even if not time barred, Plaintiff has failed to state a claim under the FMLA for interference or retaliation; (3) wrongful termination is not a recognized cause of action; (4) Plaintiff has failed to state a claim for breach of contract; (5) Plaintiff's claim for ERISA interference is time-barred and/or Plaintiff has failed to state such a claim; and (6) Plaintiff has failed to state a claim for negligent misrepresentation.  (Defendant's Motion to Dismiss ("Def.'s Mot. to Dismiss") at 11-21.[3])  Plaintiff, in his response, states that Lockheed's motion should be denied because, *inter alia*, "Plaintiff alleges detailed chronological facts showing that Defendant terminated him while he was on approved FMLA leave, after receiving repeated notice, after receiving HIPAA-restricted explanations for delay, and after receiving a physician-certified backdated FMLA period."  (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Pl.'s Resp.") at 2 (mistakes in original).)  Plaintiff further claims that he "alleges plausible claims for ERISA §[ ]510 interference, breach of contract, and negligent misrepresentation" and "Defendant's motion improperly attempts to resolve factual disputes and rewrite Plaintiff's timeline."  (*Id.*)

---

[3] The Court notes that the page-number references to Defendant's Motion to Dismiss are to the ECF page numbers at the top of such motion.

## II.    LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions).  The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments."  *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008).  "A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id*. (internal quotation marks and citations omitted).  "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *see also Tex. Health and Hum. Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016).

### III.    ANALYSIS

#### A.    FMLA Claims for Interference and Retaliation

As set forth above, Defendant, as to Plaintiff's claims for interference and retaliation under the FMLA, first argues that Plaintiff's "FMLA claims are time-barred." (Def.'s Mot. to Dismiss at 11.) In support, Defendant states:

> Plaintiff pleaded he was terminated on December 13, 2022. Dkt. 47 at ¶ 16. However, Plaintiff did not file suit until December 4, 2025—nearly three years later. Dkt. 1. The general statute of limitations for FMLA violations is two years, unless the cause of action alleges a willful violation, which case the statute of limitations is three years. 29 U.S.C. § 2617(c). . . .
>
> In his Complaint, Plaintiff alleges that Lockheed Martin's "leave administration was inconsistent, unclear, and failed to follow federal requirements." Dkt. 47 at ¶ 14. The complaint does not explicitly plead that Lockheed Martin willfully violated the FMLA, nor does Plaintiff plausibly allege factual content that permits the Court to reasonably infer Lockheed Martin willfully violated the FMLA. . . .

(Def.'s Mot. to Dismiss at 11-12.)

The general statute of limitations for FMLA violations is two years. 29 U.S.C. § 2617(c)(1). However, if Plaintiff alleges that the FMLA violation was a willful violation, the statute of limitations is three years. 29 U.S.C. § 2617(c)(2); *see Johnson v. Lear Corp.*, No. 4:21-cv-00455-P-BP, 2021 WL 4557467, at *2 (N.D. Tex. Sept. 17, 2021), *rep. and rec. adopted*, 2021 WL 4552251 (N.D. Tex. Oct. 5, 2021) (citing *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 392-93 (5th Cir. 2005)). While the FMLA itself does not provide a definition for "willful,"[4] the Fifth Circuit has determined, in looking at "willful" in other employment contexts, that to establish a willful violation of the FMLA, "a plaintiff must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Henson*, 128 F. App'x at 392-93 (internal quotation marks and citations omitted). "A negligent

---

[4] *See Terrio v. Phillips 66 Co.*, No. 22-924, 2023 WL 2710008, at *4 (E.D. La. Mar. 30, 2023).

violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation." *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016).

In his Third Amended Complaint, Plaintiff, *inter alia*, alleges:

> In October 2022, Plaintiff's son experienced a medical emergency involving a suicide attempt that required hospitalization. Because Plaintiff's son was 23 years old, Plaintiff could not access his medical information or complete FMLA paperwork without his son's HIPAA consent.

> Plaintiff informed management of this and explained that the FMLA paperwork would be completed as soon as his son was able to provide consent.

> For approximately 15 years, weekend call-ins made at least one hour before the shift were always treated as excused, regardless of written policy. This long-standing practice was consistently applied to all employees, and Plaintiff had relied on it throughout his employment. Plaintiff followed this practice on October 8, October 11, and October 29, 2022.

> At the time of this emergency, Plaintiff was already in Step 3 of the Attendance Control Program. Under company policy, an unexcused absence at Step 3 automatically triggers Step 4, which results in automatic termination. Supervisor Sarah Saenz stated in a PMT meeting that weekend emergency call-ins were excused or unexcused at her discretion. When Plaintiff called in for his son's psychiatric emergency, Ms. Saenz used her discretion to mark the absence as unexcused . . . . Her discretionary "unexcused" designation automatically advanced Plaintiff from Step 3 to Step 4, triggering the termination path.

> During the November 16, 2022 suspension meeting, Labor Relations Manager Solomon Williams [("Williams")] relied on Ms. Saenz's discretionary "unexcused" designation as part of the basis for suspension, despite informing management that the FMLA paperwork delay was caused solely by HIPAA requirements. Plaintiff submitted the completed FMLA certification immediately after his son provided consent on November 15, 2022, but Defendant later relied on an incorrect start date that excluded Plaintiff's October absences from FMLA protection.

> . . . .

> 16. On November 16, 2022, . . . Williams suspended Plaintiff indefinitely pending an attendance investigation. . . . Despite having actual knowledge that Plaintiff's FMLA leave for his son had been approved, Mr. Williams issued a termination on December 13, 2022 without conducting the investigation he stated was pending.

(Pl.'s Third Am. Compl. at 7-10 (mistakes in original).)  Plaintiff further alleges that  "Defendant interfered with Plaintiff's rights under the [FMLA] by failing to provide proper notices, failing to designate leave correctly, and failing to restore Plaintiff to his position or an equivalent position." (*Id.* at 11; *see* doc. 48 at 1.)  He further claims that "Defendant retaliated against Plaintiff for attempting to exercise FMLA rights, resulting in adverse employment actions including termination. (*Id.*)

As set forth above, Plaintiff was terminated on December 13, 2022, and he filed this suit against Defendant on December 4, 2025, nearly three years after his termination.  As a result, Plaintiff's claims under the FMLA for interference and retaliation will be barred by the two-year statute of limitations unless he has made non-conclusory allegations of fact that Defendant's conduct was willful.  *See Coleman v. Carrington Mortg. Servs., LLC*, No. 4:19-CV-00231-ALM-CAN, 2020 WL 4723174, at *7 (E.D. Tex. July 27, 2020), *rep. and rec. adopted*, 2020 WL 4698099 (E.D. Tex. Aug. 13, 2020).  Contrary to Plaintiff's arguments, the allegations contained in Plaintiff's Third Amended Complaint are not sufficient to satisfy the standard for willful conduct—"that is Defendant either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."  *Id.* (internal quotations marks and citation omitted).)  Instead, Plaintiff's allegations indicate that he was ultimately terminated pursuant to Defendant's Attendance Control Program.  Even if Plaintiff was on approved FMLA leave at the time of his termination, "the FMLA does not offer blanket protection for all adverse employment actions that follow the exercise of FMLA rights." *Jacquett*, 2020 WL 7048670, at *4; *see also Daniels v. Tex. Workforce Comm'n*, No. 4:24-cv-00559-O-BP, 2024 WL 5176871, at *4 (N.D. Tex. Dec. 10, 2024), *rep. and rec. adopted*, 2024 WL 5264443 (N.D. Tex. Dec. 31, 2024).  The fact that Williams, the person that terminated Plaintiff, had knowledge that Plaintiff's FMLA leave had

been approved is not the same as Williams having knowledge that his conduct toward Plaintiff violated the FMLA or showed reckless disregard for whether his conduct violated the FMLA. *See Jacquett*, 2020 WL 7048670, at *4. In fact, Plaintiff's allegations in his Third Amended Complaint regarding FMLA are consistent with a negligent, not a willful, violation of the FMLA. Thus, as Plaintiff failed to file his FMLA claims within two years after his termination date, the Court **FINDS and CONCLUDES** that such claims are barred by the statute of limitations. Therefore, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's FMLA claims be **GRANTED** and such claims be **DISMISSED WITH PREJUDICE**.

### B.    ERISA Interference Claim[5]

Defendant also argues that Plaintiff's claim for ERISA interference should be dismissed because Plaintiff fails to plead any "facts which allege Lockheed . . . took any prohibited action" or had the "specific intent to interfere with benefits covered by ERISA." (Def.'s Mot. to Dismiss at 20.) In addition, Defendant claims that Plaintiff's ERISA claim is also time-barred by a two-year statute of limitations. (*Id.*) Defendant argues that the "statute of limitations for a § 510 claim begins to run when the plaintiff is informed of the interference." (*Id.*) Defendant claims that, "because Plaintiff had actual knowledge of the purported 'interference' and attempted to resolve the issue as far back as 2020," Plaintiff's ERISA interference claim expired in 2022. (*Id*. at 20-21.)

In his Third Amended Complaint, Plaintiff, as applicable to his ERISA interference claim alleges, *inter alia*:

---

[5] While Plaintiff does not specify in his Third Amended Complaint what section of ERISA applies to his claim, Plaintiff, in his response, confirms that his ERISA claim falls under section 510. (Pl.'s Resp. at 2 ("Plaintiff also alleges plausible claims for ERISA §[ ]510 interference.").) In addition, in Plaintiff's proposed Fourth Amended Complaint, Plaintiff specifically states that his claim for ERISA interference is brought pursuant to 29 U.S.C. § 1140, which is section 510 of ERISA. (*See* Pl.'s Proposed Fourth Am. Compl. at 10.) *See Boudreaux v. Rice Palace, Inc.*, 491 F. Supp. 2d 625, 640 (W.D. La. June 11, 2007) ("In her Complaint, [Plaintiff] contends that defendants violated ERISA § 510, 29 U.S.C. § 1140, by improperly terminating her . . . .").

Defendant later claimed Plaintiff was a new hire or had a break in service, which is contradicted by federal wage records. Plaintiff had continuous employment history and accrued continuous service that should have been reflected in his seniority, pay rate, overtime rate, and benefits. Plaintiff's seniority was incorrect throughout his employment, and Lockheed Martin failed to correct his continuous service date despite repeated notifications from Plaintiff in 2020, 2024, and continuing into 2026. Plaintiff's incorrect seniority affected his overtime opportunities, pay progression, benefits eligibility, and insurance coverage.

. . . .

18. Defendant misclassified Plaintiff as a "new hire" despite years of continuous service.

19. This misclassification harmed Plaintiff's seniority, benefits, pension accrual, and recall rights.

20. Defendant interfered with Plaintiff's pension and retirement accruals by manually altering Plaintiff's service date and seniority status.

21. Plaintiff lost wages, overtime, retirement contributions, seniority, and other benefits due to Defendant's actions.

(Plaintiff's Third Am. Compl. at 5, 10.)

Under 29 U.S.C. § 1140 (ERISA § 510), "it is unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. To state a claim for ERISA interference under section 510, a Plaintiff must allege (1) a prohibited (adverse) employer action, (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled or may become entitled. *See Nji v. Smartsheet, Inc.*, No. 1:25-cv-00324-ADA-DH, 2025 WL 1703430, at *5 (W.D. Tex. May 14, 2025), *rep. and rec. adopted*, 2025 WL 1699828 (W.D. Tex. June 17, 2025). "'An essential element of a Section 510 [ERISA] claim is proof of defendant's specific discriminatory intent.'" *Moore v. Wireless CCTV LLC*, No. H-25-5476, 2026 WL 1130370, at *5 (S.D. Tex. Apr. 27, 2026) (quoting *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 715 (S.D. Tex. 2014)). In addition, the "incidental loss of benefits

due to discharge is insufficient to show intent." *Moore*, 2026 WL 1130370, at \*5 (internal quotation marks and citations omitted).

In this case, a global reading of Plaintiff's Third Amended Complaint shows that Plaintiff is alleging that he was wrongfully terminated for taking FMLA, not for the purpose of interfering with his ERISA benefits.[6] (*See generally* Pl.'s Third Am. Compl.) Plaintiff's allegations regarding his ERISA interference claim are centered around Defendant's incorrect documentation regarding his seniority, which, in turn "affected his overtime opportunities, pay progression, benefits eligibility, and insurance coverage." (*Id*. at 5.) While Plaintiff claims that Lockheed interfered with his benefits by, *inter alia*, "manually altering Plaintiff's service date and seniority status" (Pl.'s Third Am. Compl. at 10), "more than simply alleging an employer acted to deprive an employee of benefits is required" to state a claim for ERISA interference. *Thomas v. Grp. 1 Auto., Inc.*, No. H-23-1416, 2024 WL 1962890, at \*2 (S.D. Tex. May 3, 2024). Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim for ERISA interference.

Moreover, even if Plaintiff had stated a claim for ERISA interference under section 510, such claims are governed by a two-year statute of limitations, which begins running on the date of termination. *See Mitchell v. H-E-B, LP*, No. 25-50227, 2025 WL 349680, at \*2 (5th Cir. Dec. 5, 2025) (affirming that an ERISA claim brought pursuant to Section 510 has a two-year limitations period); *Berry v. Allstate Ins. Co.*, 84 F. App'x 442, 444 (5th Cir. 2004) (stating that, because ERISA does not specify a statute of limitations for § 510 actions, the applicable statute of limitations is two years). As Plaintiff was terminated on December 13, 2022, he was required to

---

[6] *See Nij*, 2025 WL 1703430, at \*5 ("While [Plaintiff] need not show that [Defendant's] alleged discriminatory reason was the only reason for his discharge, he must show that the loss of benefits was more than an incidental loss from [his] discharge.") (internal quotation marks and citations omitted).

file his ERISA section 510 interference claim by December 13, 2024.[7]  As Plaintiff did not file such claim until December 4, 2025, nearly three years after his termination, the Court **FINDS and CONCLUDES** that Plaintiff's ERISA interference claim is barred by the statute of limitations.

Based on the foregoing, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's claim for ERISA interference be **GRANTED** and such claim be **DISMISSED WITH PREJUDICE**.

### C.    <u>Wrongful Termination</u>

As to Plaintiff's claim for wrongful termination, Defendant argues that this claim should be dismissed because "[n]either federal nor Texas law provides a cause of action for wrongful termination or mere unfair treatment in the workplace." (Def.'s Mot. to Dismiss at 18.)  Defendant states that, "[s]ince Plaintiff alleged no statutory or constitutional violation in connection with this discrete count raised in his Complaint, he has no claim for 'wrongful termination'" against Defendant. (*Id*.)

In his Third Amended Complaint, Plaintiff claims that he was wrongfully terminated "in violation of federal law, company policy, and Plaintiff's protected rights." (Pl.'s Third Am. Compl. at 11.)  In this case, it is unclear exactly what the legal basis is for Plaintiff's wrongful

---

[7] The Court notes that Plaintiff's ERISA allegations could also be construed to be an allegation that his ERISA benefits have been miscalculated or underpaid. *See Vizinat v. Unum Life Ins. Co. of Am.*, No. 6:14-cv-00953, 2019 WL 1548653, at *5 (W.D. La. Apr. 9, 2019).  In these cases, accrual of a claim begins when, as applicable here, there is enough information for the claimant to know of a miscalculation. *Id*.  In his Third Amended Complaint, Plaintiff claims that his "seniority was incorrect throughout his employment" and that his "incorrect seniority affected his overtime opportunities, pay progression, benefits eligibility, and insurance coverage." (Pl.'s Third Am. Compl. at 5.)  Plaintiff further alleges that such "errors continued for years and were never corrected by Lockheed Martin or the union, despite Plaintiff's repeated attempts to resolve this issue." (*Id*. at 6.)  Based on these allegations, it is clear that any claim by Plaintiff regarding a miscalculation of his benefits would have accrued well over four years prior to when he filed his lawsuit against Defendant on December 4, 2025, and thus, barred by any applicable statute of limitations. *See Vizinat*, 2019 WL 1548653, at *5 ("[A]llowing beneficiaries to challenge alleged miscalculations on which the statute of limitations has already run by limiting the challenge to recent and future payments would undermine [predictability, which is one of ERIA's main purposes].") (quoting *Riley v. Metropolitan Life Ins. Co.*, 744 F.3d 248 (1st Cir. 2014); *Barker v. The Hartford Life and Acc. Ins. Co.*, No. 3:06-CV-1514-P, 2007 WL 2192298, at *5 (N.D. Tex. July 31, 2007) (noting that ERISA claims involving a breach of contract have a four-year statute of limitations).

termination claim.  To the extent he is claiming wrongful termination under the FMLA or ERISA, such claim is subsumed within his claims under these federal statutes.  *See*, *e.g.*, *Moore v. Gen. Motors LLC*, No. 4:25-CV-616-P, 2025 WL 4084036, at \*8 (N.D. Tex. Dec. 16, 2025), *rep. and rec. adopted*, 2026 WL 211144 (N.D. Tex. Jan. 27, 2026) ("Statutory claims preempt common law claims when the common law claims are based on the same conduct as the statutory claims.")  While Plaintiff has not asserted any claims against Defendant pursuant to the Texas Labor code, the Texas Supreme Court has held that "Chapter 21 [of the Texas Labor Code] provides the exclusive remedy against an employer when the 'gravamen of a plaintiff's case is Chapter 21-covered discrimination."  *Walker v. Performance Food Grp., Inc.*, No. 1:25-CV-469-ADA-SH, 2025 WL 2740404, at \*2 (W.D. Tex. Aug. 29, 2025), *rep. and rec. adopted*, 2025 WL 27353610 (W.D. Tex. Sept. 25, 2025).  "This is true whether or not a statutory claim is pursued or barred." *Id*.  Since there is no common law cause of action for workplace discrimination or retaliation, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a Texas common-law claim for wrongful termination.  Thus, the Court **RECOMMENDS** that Defendant's motion to dismiss on this issue be **GRANTED**.

### D.    Breach of Contract

In its Motion to Dismiss, Defendant argues that Plaintiff's breach of contract claim should be dismissed because Plaintiff's Third Amended Complaint does not "plead facts sufficient to state a plausible claim for breach of contract."  (Def.'s Mot. to Dismiss at 18.)  Defendant states that Plaintiff's "Complaint does not even mention the existence of a valid contract." (*Id*.)  Defendant further argues that, "[t]o the extent Plaintiff intends to bring suit against [Defendant] for breach of a collective bargaining agreement ("CBA"), the Complaint does not invoke the Labor Management

11

Relations Act of 1947 ("LMRA"), nor plead exhaustion of any grievance or arbitration procedures or that the union breaches its duty of fair representation." (*Id*.)

In Plaintiff's response, he argues that his rights regarding his claim for breach of contract "arise from the CBA and company policies, which constitute a contract." (Pl.'s Resp. at 6.) He claims that he has alleged all elements of a breach of contract claim because he alleged "the existence of contractual obligations, [] Defendant's breach, and [] resulting damages. (*Id*.)[8]

It appears based on Plaintiff's arguments in his response as well as his limited allegations regarding this claim in his Third Amended Complaint that he is attempting to bring a claim for breach of contract under Section 301 of the LMRA, "which permits an employee to file a federal cause of action against an employer for breach of a collective bargaining agreement." *Covalt v. Pintar*, No. H-07-1595, 2008 WL 2312651, at *11 (S.D. Tex. June 4, 2008). To bring such a claim, however, "the Supreme Court has made clear that employees generally must exhaust grievance procedures provided for in the CBA." (*Id*.) In this case, Plaintiff does not allege that he has attempted to exhaust such grievance procedures.[9] In fact, Plaintiff, in his Third Amended Complaint, does even mention the CBA.

Moreover, even where, as here, Plaintiff only brings the section 301 breach of contract claim against the employer (and not the union), "it is well established by both Fifth Circuit and

---

[8] The Court notes that in Plaintiff's proposed Fourth Amended Complaint, he alleges, *inter alia*, that "Section 6-A of the collective bargaining agreement requires bridging of administrative gaps." (Pl.'s Proposed Fourth Am. Compl. at 10.) Plaintiff further alleges that "Defendant failed to bridge Plaintiff's seniority from 2009 to present." (*Id*.)

[9] The Court notes that, in Plaintiff's proposed Fourth Amended Complaint, he states that he "has exhausted all applicable administrative remedies." (Pl.'s Proposed Fourth Am. Compl.at 2.) This statement, however, is conclusory, and will not defeat a motion to dismiss on this issue. *See*, *e.g.*, *McNealy v. Becnel*, No. 14-2181, 2016 WL 6070073, at *9 (E.D. La. Oct. 17. 2016) (finding that general statements regarding issues related to the exhaustion of administrative remedies, without any facts to support such claims, are insufficient to survive a motion to dismiss for failure to state a claim).

12

Supreme Court precedent that a plaintiff bringing [such a] a hybrid breach-of-contract and fair-representation claim under section 301 'must prove [or allege in this case] *both* that the employer violated the CBA *and* that the union breached its duty.'" *Cooper v. Cornerstone Chem. Co.*, No. 20-1454, 2022 WL 1211424, at *2 (E.D. La. Apr. 25, 2022).  In this case, Plaintiff has failed to allege that the union breached its duty of fair representation.[10]  Based on the foregoing, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim for breach of contract.[11] Consequently, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's claim for breach of contract be **GRANTED** and this claim be **DISMISSED WITH PREJUDICE**.

### E.    Negligent Misrepresentation

In his Third Amended Complaint, Plaintiff also asserts a claim for negligent misrepresentation.  However, because Plaintiff does not assert such claim in his proposed Fourth Amended Complaint, the Court **FINDS and CONCLUDES** that Plaintiff no longer wishes to pursue such claim.  Consequently, the court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's claim for negligent misrepresentation be **GRANTED** and such claim be **DISMISSED WITH PREJUDICE**.

### F.    Pro Se Parties and Right to Amend

On a motion to dismiss for failure to state a claim, a "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint

---

[10] The Court notes that Plaintiff attached to his Third Amended Complaint a copy of a text message, dated "December 8" from an unknown person to a contact titled "John Pierce Union." (Pl.'s Third Am. Compl. at 31.)  This text message stated, "Hello my friend Are you not going to arbitrage Marc Salazar Case." (*Id.* (mistakes in original).)  The text message in response stated, "No sir I am not." (*Id.*)  Such text messages, however, do not satisfy Plaintiff's duty to allege the union violated its duty of fair representation.

[11] It also appears that any section 301 breach of contract claim would also be barred by the statute of limitations as Plaintiff failed to sue within six months of when he knew or should have known of the alleged injury based on the breach of the CBA.  *See Carter v. St. Tammany Parish Sch. Brd.*, No. 21-1303, 2022 WL 558175, at *4 (E.D. La. Feb. 24, 2022).  (*See also* Def.'s Mot. to Dismiss at 19.)

with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See Clements v. Bank*, No. 6:20-CV-00821, 2021 WL 4483829, at *3 (W.D. La. Sept. 29, 2021) ("Since [Plaintiff] has previously been granted leave to amend his complaint to cure these defects, the Court concludes that any further attempt to an amendment would be futile.")

As noted above, Plaintiff's Motion for Leave to File Fourth Amended Complaint is also pending before the Court. The Court notes, however, that Plaintiff has already been given the opportunity to file three amended complaints, including one after Defendant filed its initial Motion to Dismiss [*see* docs. 8, 19, 20, 30, 35, 47]. The Plaintiff is now asking the Court to allow him to file what would be his fifth complaint. In the proposed Fourth Amended Complaint, Plaintiff again alleges claims against Defendant for FMLA interference, FMLA retaliation, wrongful termination, breach of contract, and ERISA interference. (Pl.'s Proposed Fourth Am. Compl. at 9-10.) Plaintiff also adds an additional claim for failure to restore to equivalent position under the FMLA and drops his claim for negligent misrepresentation. (*Id*. at 10-11.)

A review of Plaintiff's proposed Fourth Amended Complaint shows that Plaintiff's FMLA and ERISA claims suffer from the same defects as set forth above. While Plaintiff attempts to add allegations that Defendant's actions relating to FMLA and ERISA were "intentional," such allegations are conclusory. In addition, while Plaintiff also attempts to add facts that raise issues

14

of equitable tolling, concealment, or a continuing violation to defeat any ERISA section 510 two-year statute of limitations issues, it is clear based on the current live pleading before the Court that Plaintiff was aware of issues regarding his seniority and benefits (even if not aware of every payroll coding detail) since at least 2020 and no later than August 21, 2023, when he was reinstated and his alleged benefits were not also properly reinstated. (*See*, *e.g.*, Pl.'s Third Am. Compl. at 5 ("Plaintiff's seniority was incorrect throughout his employment, and Lockheed Martin failed to correct his continuous service date despite repeated notifications from Plaintiff in 2020, 2024, and continuing into 2026. Plaintiff's incorrect seniority affected his overtime opportunities, pay progression, benefits eligibility, and insurance coverage."); Pl.'s Proposed Fourth Am. Compl. at 6 ("Plaintiff was reinstated on August 21, 2023, but Defendant failed to restore correct pay rate, overtime rotation, seniority, vacation accrual, and retirement contributions, and short one of month back regular pay."). In addition, Plaintiff's factual allegations in his proposed Fourth Amended Complaint regarding concealment of material facts are directed at the union (and not Defendant).[12] (*See* Pl.'s Proposed Fourth Am. Compl. at 7.) Furthermore, the continuing violation theory has, in general, been found to be inapplicable to ERISA cases. *See Jackson v. AT&T Ret. Sav. Plan*, No. 6:19-CV-00116, 2019 WL 5617029, at *1 (W.D. La. Oct. 30, 2019) ("Although this circuit has never squarely addressed whether a continuing violation theory applies to ERISA limitations periods, the dicta in this circuit weighs against an application of such a theory in the ERISA context."); *see also Faciane v. Sun Life Assurance Co. of Canada*, No. 17-17429, 2018 WL 2938317, at *5 (E.D. La. June 12, 2018). Accordingly, the Court **FINDS and CONCLUDES** that the granting of any additional leave for Plaintiff to amend his claims would be futile. Thus,

---

[12] "Fraudulent concealment tolls the statute of limitations when a defendant knowingly conceals facts from a plaintiff that are necessary to support a claim." *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343 (E.D. Tex. Mar. 18, 2003).

15

the Court **RECOMMENDS** that Plaintiff's Motion for Leave to File Fourth Amended Complaint be **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** Defendant's Motion to Dismiss With Prejudice Plaintiff's Third Amended Complaint [doc. 51] be **GRANTED** and that all claims asserted by Plaintiff be **DISMISSED WITH PREJUDICE**.  The Court further **RECOMMENDS** that Plaintiff's Motion for Leave to File Fourth Amended Complaint [doc. 79] be **DENIED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

16

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 26, 2026**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 12, 2026.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17